```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                    :
MARTIN CALHOUN
                                    :
    v.                              :   Civil Action No. DKC 12-2014
                                    :
PAUL SCHWEINSBURG,
et al.                              :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case are a motion for summary judgment filed by Defendants Paul Schweinsburg, Jason Avery, and Sean Burroughs (ECF No. 51), and a motion to withdraw admissions filed by Plaintiff Martin Calhoun, (ECF No. 53).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Defendants' motion for summary judgment will be granted in part and denied in part, and Plaintiff's motion to withdraw admissions will be granted.

**I.  Background**[1]

**A.  Factual Background**

On May 21, 2009, Plaintiff was driving his vehicle in Clinton, Maryland, when he observed that he was being followed

---

[1] Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

by a police cruiser. As soon as Plaintiff noticed that the police cruiser had activated its sirens, he pulled his vehicle over into the parking lot of a gas station. Plaintiff watched as Officer James Lacombe approached his vehicle, and noticed that he had raised his baton. Plaintiff, who had been beaten by police before, panicked when he saw the raised baton and drove away. Officer Lacombe got back in his police cruiser and continued pursuing Plaintiff with his sirens activated. During the pursuit, Officer Lacombe radioed for back-up and requested a stolen vehicle check. (ECF No. 51, at 2). The dispatcher informed him that the vehicle driven by Calhoun was not stolen. (*Id.*). Plaintiff drove for a short while and then subsequently returned to the same gas station, parked his vehicle, got out, put his hands up and yelled "don't shoot." (ECF No. 51-11, at 11). At this point, Officers Schweinsburg and Burroughs, and Lieutenant Avery, had arrived on the scene. (ECF No. 51-2, at 2). Plaintiff saw multiple police officers arrive, again started panicking, and began to flee from the officers on foot. (ECF No. 51-11, at 11). Officers Schweinsburg and Lacombe chased Plaintiff on foot while Lt. Avery and Officer Burroughs secured Plaintiff's vehicle. (ECF No. 51-2, at 2). At this point, Plaintiff's and Defendants' version of the events diverge.

### 1. Plaintiff's Version of the Events

During the on-foot pursuit, Plaintiff yelled out to the officers that he was unarmed and asked them not to shoot him. (ECF No. 45 ¶ 21). Plaintiff heard the officers yelling "shoot him" and "tase him." (ECF Nos. 54-1, at 2 and 51-11, at 11). Plaintiff was tased by one of the officers, lost control of his muscles, and fell to the ground into a hole. (*Id.*). While Plaintiff was on the ground, he was punched and kicked by the Officers for approximately five minutes. (ECF Nos. 45 ¶¶ 24-25, 28 and 51-11, at 11, 20-21). Plaintiff curled up in a ball to protect his face and his previously injured hip. (ECF Nos. 45 ¶ 27 and 51-11, at 11). Eventually one of the officers said "let him up" and the officers proceeded to handcuff Plaintiff. (ECF No. 54-1, at 2).

Following this incident, Plaintiff was taken by ambulance to Southern Maryland Hospital, where he was treated. (*Id.* ¶ 36). Upon release, Plaintiff was taken to the Department of Corrections in Upper Marlboro, Maryland. Plaintiff states that he suffered painful injuries as a result of Defendants' conduct, including bruises, lacerations, and contusions, suffered severe physical and mental pain and suffering, and incurred expenses for legal services as well as for hospital and physician care[.]" (ECF No. 45 ¶ 37).

**2. Defendants' Version of the Events**

During the on-foot pursuit, Officers Schweinsburg and Lacombe chased Plaintiff, and Officer Schweinsburg repeatedly called out to him to "stop, show his hands, and that he was under arrest." (ECF No. 51-2, at 2). Plaintiff did not obey Officer Schweinsburg's commands. Instead, at some point during the pursuit Plaintiff turned toward Officer Schweinsburg and with one fist clenched started to approach the officer in an aggressive manner. Officer Schweinsburg, who could only see one of Plaintiff's hands, deployed his taser because he could not tell if Plaintiff was holding a weapon in his other hand. After being tased, Plaintiff fell into a hole. Plaintiff continued to resist Officer Lacombe and Schweinsburg's attempts to arrest him by struggling and crawling further into the hole. The Officers were finally able to handcuff Plaintiff and pull him from the hole. During the struggle, neither of the officers tackled Plaintiff, nor did they hit, beat, kick, or punch him. (ECF No. 51-2, at 3-4). Plaintiff was taken to Southern Maryland Hospital where he was treated for the removal of the taser prongs and then released and taken to the Department of Corrections.

**B.   Procedural Background**

On May 18, 2012, Plaintiff filed a complaint against Defendants in the Circuit Court for Prince George's County,

4

Maryland.[2]  (ECF No. 2).  Defendants removed the case to this court on July 6, 2012, based on federal question jurisdiction. (ECF No. 1).  Plaintiff filed an amended complaint on September 25, 2013, asserting two counts:  (1) false arrest without probable cause under 42 U.S.C. § 1983; and (2) excessive force under § 1983 in violation of Plaintiff's Fourth Amendment rights and his rights under the Maryland Declaration of Rights, Articles 24 and 25.  (ECF No. 45).

On May 2, 2014, Defendants filed a motion for summary judgment.  (ECF No. 51).  Defendants requested in their motion that their requests for admissions that were sent to Plaintiff on February 6, 2014 and March 26, 2014, to which Plaintiff failed to respond, be deemed admitted.  (ECF No. 51-2, at 5). On June 14, 2014, Plaintiff opposed the motion and moved for leave to withdraw admissions.  (ECF Nos. 53 and 54).  Defendants opposed Plaintiff's motion to withdraw admissions (ECF No. 55), and replied to Plaintiff's opposition.  (ECF No. 57).

**II.  Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See*

---

[2] Plaintiff's original complaint was filed against several other Defendants, including Prince George's County, Maryland and Officer James Lacombe, who have been dismissed from this case. (ECF Nos. 30 and 44).

5

Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Once a properly supported motion for summary judgment is filed, the nonmoving party is required to make a sufficient showing on an essential element of that party's claim as to which that party would have the burden of proof to avoid summary judgment. *Celotex,* 477 U.S. at 322–23.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most

favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); see also *EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993) (*quoting Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

**III. Analysis**

    **A.   Plaintiff's Motion to Withdraw Admissions**

Defendants assert that they sent Plaintiff two sets of requests for admissions on February 6, 2014 and March 26, 2014 (ECF Nos. 51-21 and 51-22), and that as of May 2, 2014, the day they filed their motion for summary judgment, Plaintiff had not responded to either request. Defendants contend that because Plaintiff failed to respond to their requests for admissions

within the thirty-day time frame required by Fed.R.Civ.P. 36(a), "all of the[ir] Requests for Admissions should be deemed admitted for the purpose of this summary judgment motion." (ECF No. 51-2, at 13). In response, Plaintiff moved to withdraw admissions on June 14, 2014 (ECF No. 53), and filed responses to Defendants' second set of requests for admission pursuant to Fed.R.Civ.P. 36(b).[3] (ECF No. 53-2).

Pursuant to Rule 36(a), because Plaintiff failed to respond to Defendants' requests for admissions within thirty days, the matters which Defendants requested admitted were automatically deemed admitted. Rule 36(b), however, allows the court to permit withdrawal of admissions "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *See* 8B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2257 (3d ed. 2002) ("[An] admission that otherwise would result from a failure to make timely answer should be avoided when to do so will aid in the presentation of the merits of the action and will not prejudice the party who made the request."). "The court has 'considerable discretion over the

---

[3] Plaintiff notes in his opposition to Defendants' motion for summary judgment that Defendants' first set of requested admissions related only to his false arrest claim, as to which he has already "concede[d] defeat." (ECF No. 54-1, at 3).

8

withdrawal of admissions once they have been made.'" *Kress v. Food Employers Labor Relations Ass'n,* 285 F.Supp.2d 678, 681 (D.Md. 2003) (*quoting U.S. v. Turk,* 139 F.R.D. 615, 618 (D.Md. 1991)).

Defendants' requested admissions involve matters central to the resolution of this dispute. For example, Defendants ask Plaintiff to admit in request number 15 that "Officer Schweinsburg did not use excessive force against the Plaintiff" and in request number 18 that "[Officer] Schweinsburg [is] entitled to qualified immunity." (ECF No. 51-22, at 7). Both of these requests go to the heart of Plaintiff's excessive force claim. It is clear that refusal to allow Plaintiff to withdraw the admissions would unduly hamper his ability to present the merits of his case. In addition, it does not appear from Defendants' summary judgment motion that they are relying on Plaintiff's admissions, such that they would be prejudiced if the admissions were withdrawn. (ECF No. 51). Therefore, Plaintiff's motion to withdraw admissions will be granted.

### B. Motion for Summary Judgment

After Defendants moved for summary judgment, Plaintiff conceded in his opposition memorandum that summary judgment should be entered in favor of all Defendants and against him on the false arrest claim, and should be entered in favor of Defendants Avery and Burroughs on the excessive force claim.

9

(ECF No. 54, at 1). Accordingly, Plaintiff's only remaining claim is against Defendant Schweinsburg for excessive force.[4]

Defendant Schweinsburg contends that he is entitled to qualified immunity as to Plaintiff's excessive force claim because the force he used to seize Plaintiff was objectively reasonable under the circumstances. Plaintiff argues that Defendant Schweinsburg is not entitled to qualified immunity because a reasonable official would have understood that Defendant's continued use of force against Plaintiff after he had been apprehended constituted excessive force and violated Plaintiff's rights.

Qualified immunity is an affirmative defense to Section 1983 claims and "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Two inquiries must be satisfied to determine whether an official is entitled to qualified immunity: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was

---

[4] Because Officer Schweinsburg is the only remaining Defendant, he will hereinafter be referred to in the singular.

clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part on other grounds in Pearson,* 555 U.S. at 236. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 236. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Batter v. Gomez,* 324 F.3d 288, 293–94 (4th Cir. 2003). The burden is on the Plaintiff to prove that the alleged conduct violated the law, while Defendant must prove that the right was not clearly established. *Henry v. Purnell,* 501 F.3d 374, 377–78 (4th Cir. 2007).

Here, Plaintiff asserts that Defendant Schweinsburg violated his right under the Fourth Amendment to be free from unreasonable and excessive force during a seizure. Excessive force claims are "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Noel v. Artson,* 641 F.3d 580, 590 (4th Cir. 2011) (*quoting Graham v. Connor,* 490 U.S. 386, 395 (1989)). Reasonableness of force is analyzed on the basis of the totality of the circumstances according to an objective standard. This process requires balancing "the nature and

quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner,* 471 U.S. 1, 8 (1985) (citation omitted). Relevant factors in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting the stop or attempting to flee. *See Graham,* 490 U.S. at 396. The determination is to be made "from the perspective of a reasonable officer on the scene." *Id.* The Fourth Circuit has held that reasonableness is determined "based on the information possessed by the officer at the moment that force is employed." *Waterman v. Batton,* 393 F.3d 471, 477 (4th Cir. 2005).

Plaintiff does not challenge Defendant Schweinsburg's use of the taser as being excessive — he admits that the taser use was justified because he ran from the Officers and was resisting arrest. (ECF No. 53-2, at 2). Instead, Plaintiff challenges Defendant Schweinsburg's use of force after he was tased, stating that "Defendant Schweinsburg could not have reasonably believed that it was lawful to beat the [P]laintiff after apprehension. Such use of force is unnecessary, gratuitous, and disproportionate." (ECF No. 54-1, at 4). Plaintiff asserts that before he began to flee from the officers, he raised his hands in the air to show that he was unarmed and while running

12

yelled to the Officers that he was unarmed. Plaintiff also states that after he was tased, he lost control of his muscles and fell into a hole in the ground. He alleges that while he was in the hole, Officer Schweinsburg and Officer Lacombe continued to beat him, by elbowing him and punching him "in his ribs, his back, and his hips." (ECF No. 54-1, at 2). Plaintiff contends that while this beating persisted, he was not resisting the Officers, but was curled up trying to protect himself. (ECF No. 54-1, at 2). He also alleges that the beating went on for several minutes until the officers finally handcuffed him.

Defendant Schweinsburg contends that given the circumstances, his use of force was reasonable. He points to a number of factors, which he alleges support the reasonableness of the force he employed: Plaintiff was actively resisting arrest; Plaintiff's behavior appeared to pose a threat towards the officers pursuing him; and finally, the injuries Plaintiff sustained were minor and not substantial enough to sustain a Section 1983 claim. (ECF No. 51-2, at 9-12). Defendant Schweinsburg also argues that his use of force was not excessive because Plaintiff continued to struggle with the officers while they were trying to handcuff him. (ECF No. 57, at 4).

Crediting Plaintiff's version of events, there is a genuine dispute as to whether Defendant Schweinsburg used excessive force against Plaintiff after he had been tased. *See Saucier*,

13

533 U.S. 201 (when determining whether defendants are entitled to qualified immunity, a court must consider the facts "in the light most favorable to the party asserting the injury"). Any continued beating of Plaintiff by Defendant Schweinsburg after Plaintiff was tased, fell to the ground, temporarily lost muscle control, and was no longer resisting arrest, would constitute excessive force despite the fact that Plaintiff had not yet been handcuffed because Defendant Schweinsburg's force would have been unnecessary.

Defendant Schweinsburg's version of events differs from Plaintiff in that he recalls Plaintiff continuing to struggle after he fell in the hole and insists that he did not kick or beat Plaintiff. As noted in *Cole v. Prince George's County Md*, 798 F.Supp.2d 739, 743 (D.Md. 2011), "granting 'summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants.'" *Id.* (*quoting Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir. 1992)). Moreover, Defendant's argument that Plaintiff's *de minimis* injuries are not enough to sustain a Section 1983 claim is without merit. The extent of Plaintiff's injuries is only a single factor that can be considered when determining whether Defendant's use of force was reasonable. Additionally, Defendant Schweinsburg has not argued that the right to be free from excessive force was not clearly

established by May 2009, the day Plaintiff was apprehended. Accordingly, summary judgment will be denied as to the excessive force claim.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion to withdraw admissions will be granted.  Defendants' motion for summary judgment will be granted in part and denied in part.  Summary judgment will be granted in favor of Defendants and against Plaintiff on all of the claims, except the claim for excessive force against Officer Schweinsburg.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
